Dale TJEERDSMA, Plaintiff
and Appellee,

v.

GLOBAL STEEL BUILDINGS, INC.
and Miracle Steel Corporation,
Defendants and Appellants.

No. 17201.

Supreme Court of South Dakota.

Argued Jan. 9, 1991.

Decided Feb. 27, 1991.

David V. Vrooman, Sioux Falls, for plaintiff and appellee.

Arthur M. Hopper of Austin, Hinderaker, Hackett & Hopper, Watertown, for defendants and appellants.

MILLER, Chief Justice.

Global Steel Buildings (Global) and Miracle Steel Corporation (Miracle Steel) appeal from an order denying arbitration. We affirm.

## FACTS

Plaintiff Dale Tjeerdsma is a resident of, and farms near, Avon, South Dakota. Defendant Global is a North Dakota corporation with its principal place of business in Fargo. Defendant Miracle Steel is a South Dakota corporation with its principal place of business in Watertown.

Global sells steel buildings supplied to it by Miracle Steel. Generally, Global's practice is to obtain sales leads and forward them to independent representatives. Dennis Burton is an independent sales representative for Global. He is a resident of

Missouri, and is the salesman who called on Tjeerdsma at his home.

On July 23, 1987, Tjeerdsma signed a sales agreement with Burton for the purchase of a quonset-type building from Global. (A 50 × 72 foot steel farm building.) The purchase price was $10,000.[1] The sales agreement contained an arbitration clause which stated:

> 10. ARBITRATION—All claims, disputes and other matters in question arising out of or relating to this agreement of sale, or breach hereof, shall be submitted to binding arbitration in the City of Fargo, North Dakota.

Global accepted the agreement in North Dakota and placed an order for the materials with Miracle Steel.

Tjeerdsma accepted delivery of the building material at Miracle Steel's plant in Watertown and paid the balance of the purchase price of $8,500.00 with a certified check payable to Global. Tjeerdsma assembled the building at his farm. It collapsed after it was filled with grain.

Tjeerdsma brought this breach of warranty action by service of the summons and complaint dated June 21, 1989, upon each of the defendants. Tjeerdsma generally alleged that the building was in a defective condition and unfit for the purpose for which it was intended. Defendants jointly answered. They did not assert arbitration as an affirmative defense[2] although they asserted six other defenses. In any event, there was no mention whatsoever in defendants' pleadings regarding the existence of an arbitration agreement.

Extensive pretrial discovery then followed: (1) Tjeerdsma served two sets of interrogatories, (2) Global and Miracle both filed answers to interrogatories, (3) Miracle Steel served interrogatories on Tjeerdsma,

(4) Tjeerdsma served answers to Miracle Steel's interrogatories, (5) defendants filed a request for admissions, (6) Tjeerdsma responded to this request, (7) defendants filed a request for production of documents, (8) Tjeerdsma responded, and (9) Tjeerdsma was deposed. Tjeerdsma filed a certificate of readiness for trial on October 18, 1989, and made a motion to strike defendants' defenses. Defendants objected to the certificate of readiness, however, their objections were not based on arbitration. (Defendants' objection was that "[a]ll necessary discovery has not been completed, and all pre-trial motions have not been disposed of.") Furthermore, defendants made a motion to obtain the deposition of Rodney M. Nohr, who allegedly was Tjeerdsma's expert witness. Tjeerdsma filed a motion in resistance to the deposing of Nohr.

In January 1990, defendants filed their motion to compel arbitration. (At the time this motion was made there existed an extensive court file of approximately 100 pages.) A hearing was held before the trial court which issued a memorandum decision and entered its findings of fact, conclusions of law, and order denying defendants' motion to compel arbitration.

## ISSUE

### WHETHER THE DEFENDANTS HAVE WAIVED THEIR RIGHT TO ARBITRATION.

Global and Miracle Steel argue that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (1988), applies to this transaction and requires the enforcement of the arbitration provision in the contract. Alternatively, they argue that SDCL ch. 21–25A (Enforcement of Arbitration Agreements) permits enforcement of the arbitration provision in

---

1. Tjeerdsma gave Burton a check for $1,500.00. According to Wane S. Engkjer's (president of Global Steel) affidavit, the check was endorsed by Burton, on behalf of Global. Global's practice was to have its representatives take a customer's check to the customer's bank, convert the check to certified funds payable to Global. The funds were then forwarded to Global's office in Fargo.

2. We do not and should not reach the issue of whether it was required by SDCL 15–6–8(c). It was raised for the first time at oral argument and thus has not been briefed. The statute appears to require that "arbitration and award" be pled as an affirmative defense. Without additional research, which clearly is not necessary in this case, we cannot ascertain the significance of the "and award" language.

the contract even though the agreement provided for arbitration outside of the state of South Dakota. (*See* SDCL 21–25A–4.) We do not reach those issues because we uphold the trial court's ruling that defendants have waived any rights they may have had to arbitration.

An arbitration agreement may be waived. *Frye v. Paine, Webber, Jackson & Curtis, Inc.*, 877 F.2d 396 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1318, 108 L.Ed.2d 493 (1990). There is an overriding policy favoring arbitration, and the waiver of that right is not to be lightly inferred. The mere delay in seeking a stay of litigation without some resultant prejudice to a party cannot be deemed a waiver. The essential test for waiver of arbitration requires conduct or activity inconsistent with the right to arbitration *and* prejudice to the party claiming waiver. *Psarianos v. Standard Marine, Ltd., Inc.*, 728 F.Supp. 438 (E.D.Tex.1989); *Finkle and Ross v. A.G. Becker Paribas, Inc.*, 622 F.Supp. 1505 (D.C.N.Y1985); *see also Nesslage v. York Securities, Inc.*, 823 F.2d 231 (8th Cir.1987); *N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722 (8th Cir. 1977).

The issue of whether one has waived his right to arbitrate turns on the significance of the action taken in a judicial forum. The issue is one for the court to decide. *Weight Watchers of Quebec Ltd. v. Weight Watchers Int'l Inc.*, 398 F.Supp. 1057 (E.D.N.Y.1975). Delay and the extent of the moving party's trial-oriented activity are material factors in assessing a claim of prejudice. *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250 (4th Cir.1987). Prejudice may result from lost evidence, duplication of efforts, or the use of discovery methods unavailable in arbitration. *Prudential–Bache Securities, Inc. v. Stevenson*, 706 F.Supp. 533 (S.D. Tex.1989).

"The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes by avoiding the expense and delay of extended court proceedings." *L.R. Foy Const. Co. v. Spearfish Sch. Dist.*, 341 N.W.2d 383, 388 (S.D.1983) (Henderson, J., specially concurring) (citations omitted). Here, defendants did not initiate the action, answered the complaint (and did not assert their right to arbitrate), a deposition was taken, interrogatories and answers were filed, requests for admissions and answers thereto were filed, and finally a certificate of readiness for trial was filed by Tjeerdsma.[3] As noted earlier, not even the objection to the certificate of readiness raised the arbitration defense. All of this conduct is inconsistent with an arbitration defense. The prejudice to Tjeerdsma is obvious. Thus, we agree with the trial court's holding that defendants have waived their right to arbitration under the agreement.

Affirmed.

WUEST, HENDERSON and SABERS, JJ., and HERTZ, Acting J., concur.

MORGAN, Retired J., not participating.

---

**3.** This case is distinguishable from *City of Hot Springs v. Gunderson's, Inc.*, 322 N.W.2d 8 (S.D. 1982). There, after discovery had begun, but before trial, Gundersons moved to compel arbitration. Their motion was denied and they appealed. We reversed, noting a strong public policy in favor of arbitration. The decision does not discuss waiver, indeed, it is unclear whether or not it was ever asserted. Here, in contrast, Tjeerdsma vigorously argued that defendants had no right to arbitration due to waiver.